ABRAHAM LATOURETTE, Respondent, *v.* JAMES EAGER et al., Appellants.

(Argued May 4, 1875; decided June term, 1875.)

DECIDED upon the facts in the case.

*Alvin C. Bradley* for the appellants.

*F. G. Smedley* for the respondent.

EARL, C., reads for affirmance.
All concur.
Judgment affirmed.

---

HAMILTON PERKINS, Appellant, *v.* WILLIAM GILES et al., Respondents.

(Argued January 13, 1875; decided June term 1875,.)

THIS action was brought upon an award. The same award has been before the Court of Appeals in a prior action to set it aside on the ground of uncertainty. (50 N. Y., 228.)

The plaintiff owned a saw-mill upon a stream and the defendants a flouring-mill below. Ezra Cuykendall originally owned both mills, conveying the grist-mill, by deed dated in 1839, to one Mosher, under whom the defendants claim. In the grant to Mosher there is a privilege of using and maintaining a mill-dam upon the stream, with the following provision: "The said party of the second part (Mosher) to keep always, and at all times hereafter, the aforesaid dam and raceway in good repair and of sufficient hight to secure the water as high as it has heretofore been usually kept, inevitable accidents excepted, with the appurtenances," etc. The grantor reserved the surplus water over and above what was necessary for the use of the flouring-mill. The plaintiff derives his title from Cuykendall, the grantor.

Controversies having arisen between the parties as to the effect of the deed the whole matter was submitted, in writing, to an arbitrator. He made an award, in 1867, in which he set forth what he deemed to be the true construction of the deed, and in which he also gave directions as to the duties of the respective parties to the arbitration toward each other.

The material portions of the award are as follows: " It is plainly the duty of Giles and Tracy " (the defendants) " to keep in good repair, and at a proper hight and width, the mill-dam and the banks of the race-way through their entire length, including. all breastwork, timber, boards, gates and barriers that are required to regulate the stream at the dam. The probability or possibility of the pond, race and reservoir being filled up with sediment did not, it is evident, enter into the minds of the original parties to these rights. This accumulation I consider to be one of those 'inevitable accidents' referred to in the deed as an exception to the obligations of Giles and Tracy. But the duty devolves upon Giles and Tracy of cleaning out the pond, race and reservoir so as to enable both parties to have the full benefit of the water of the stream without undue obstruction, and not to allow the pond, race and reservoir to fill up and diminish in size as to impair the value of the stream.

" One-third of the expense thus incurred in removing the mud or the obstructions from the pond and reservoirs and from the race-way above the west side of the saw-mill flume shall be paid by Hamilton Perkins " (plaintiff) " or his successors, to Giles and Tracy " (defendants) " or their successors."

It appeared at the trial that the mill pond from which each mill is supplied with water is situated about 100 rods from the plaintiff's mill, and the water is thence conducted by a race-way of the width of about fourteen feet, but of varying depth, to the plaintiff's mill. This race-way is continued to the defendants' mill, further down the stream, a distance of about fifty rods, so that all the water used by the defendants necessarily passes the plaintiff's flume. Between the mill pond and the plaintiff's mill there were formerly two reservoirs of water, which, with the mill pond up to the year 1839 and for several years thereafter, comprised several acres of water. They

varied in depth (from one to six feet in particular places), and had been used by the mills as treasuries for the purpose of husbanding the flow of water and regulating the supply. Both pond and reservoirs had tended to become gradually filled up from time to time with sediment. This had been more or less completely cleared out or excavated. In the year 1844 there had been a thorough excavation of the race-way and reservoirs tending to restore the reservoirs to their former condition as a treasury of water. The clearing out of the pond had, however, been neglected for several years before the defendants acquired their rights. An island of the sediment had formed in the pond and occupied its principal area. Neither the pond nor reservoirs at the time of the award, nor subsequently, were available for the purpose of husbanding the water to the extent previous to 1844. The plaintiff showed that for a considerable portion of the time there was not sufficient water in the race-way to enable his mill to run, and that the general supply was inadequate to his purposes. It is conceded that there is sufficient evidence of damage, provided that he is entitled in law to recover.

In October, 1867, after the award, the defendants undertook to clear out the race-way, and with men and teams removed so much of the mud principally from the upper portion of it towards the dam as they considered reasonable. While they did not undertake to clear the sediment from the reservoirs or pond, they cut channels through the mud of the principal reservoir, so as to make the passage through it equal to the general capacity of the race-way.

Under the state of facts the judge substantially charged the jury that regard was only to be had to the construction which the arbitrator in his award had given to the conveyances under which the parties held their respective rights, and that accordingly the plaintiff had no right to claim of the defendants that the latter should clear out or remove the accumulation of deposits in the pond, race-way or reservoirs at the time of making the award, except so far as this accumulation affects the natural and due *flow* of the stream through the pond, reservoir and race-way. He added, in a more direct form, that it was required of them that they should clear out whatever accumu-

lation of deposit there was which impeded the due flow of the water through the water-way.

Plaintiff excepted to the propositions and asked the court to charge, in substance, that if the jury found, as matter of fact, that the full benefit of the water of the stream could not be enjoyed by the plaintiff without cleaning out the pond and reservoir as well as the race-way, that defendants were bound by the award to make the necessary excavations; this was refused and defendants' counsel excepted. *Held* (LOTT, Ch. C., and REYNOLDS, C., dissenting), no error; that the words entitling the plaintiff to "the full benefit of the water of the stream" were qualified by the words "without undue obstruction," and that defendants were only required so to clear a passage as to enable the water of the stream to flow with undiminished volume, and did not require defendants to excavate the pond and reservoirs further than was necessary for this purpose.

*James R. Cox* for the appellant.

*D. Dwight* for the respondents.

DWIGHT, C., reads for affirmance; EARL and GRAY, CC., concur.

LOTT, Ch. C., reads for reversal; REYNOLDS, C., concurs.

Judgment affirmed.

---

JACOB STAPENHORST, Appellant, *v.* JULIUS WOLFF, Respondent.

Where a judgment, entered upon the report of a referee, is reversed by the General Term this court will not, for the purpose of sustaining the judgment, adopt a theory not set up in the complaint or broached upon the trial.

(Argued May 5, 1875; decided June term, 1875.)

THIS action was brought to recover an amount alleged to have been agreed to be paid by defendant to plaintiff, by virtue of an agreement closing a partnership between the parties, whereby defendant purchased plaintiff's interest. The